CIVIL COMPLAINT

1 of 11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Ronald L. Stone Bey, Sui Juris, In Propria Persona, Jus Sanguinis, Authorized Representative
Ex Relatione: RONALD L. STONE JR
No.(#)71310-066
Full Name of Plaintiff & Inmate Number

v.

Civil No. ____________
(to be filled in by the Clerk's Office)

U.S DEPARTMENT of JUSTICE
*Name of Defendant 1*

U.S. HOUSE Of REPRESENTATIVES
*Name of Defendant 2*

Honorable Judge Gerald J. Pappert (Federal District court Judge)
*Name of Defendant 3*

FEDERAL BUREAU Of PRISONS
*Name of Defendant 4*

Warden/Custodian Scott Finley
*Name of Defendant 5*

(✓) Demand for Jury Trial

( ) No Jury Trial Demand

FILED
HARRISBURG, PA
JAN 2 1 2021
DEPUTY CLERK

I. NATURE Of Complaint

Civil Rights Action under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) (federal defendants)

"Prisoner is seeking redress from a governmental entity or an officer or employee of a govermental entity." (See: James v. PA Dept. of Corr., 230 F. Appx 195, 197 (3rd Cir. 2007) (not precedential)

2 of 11

II. ADDRESSES and INFORMATION

A. PLAINTIFF

Ronald L. Stone Bey, Authorized Representative, In propria Persona
[Ex Relatione: RONALD L. STONE JR]

STONE, RONALD, L
*Name (Last, First, MI) *

71310-066
*Inmate Number*

Federal Correctional Institution-Schuylkill
*Place of Confinement

P.O Box 759
* Address *

Minersville, Schuylkill County, Pennsylvania, 17954-0759
* City, County, State, zip code

(✓) Convicted and sentenced federal prisoner

B. DEFENDANT(S)

Defendant 1

U.S DEPARTMENT of Justice
*Name *

U.S Attorney General
*Current Job Title *

950 Pennsylvania Avenue, NW
*Current Work Address *

Washington, D.C. 20530 (District of Columbia)
City, County, State, zip code

Defendant 2:

U.S. House of Representatives

* Name *

Congress

* Current Job Title *

1500 Pennsylvania Avenue, NW

*Current Work Address *

Washington, D.C 20515-6601 (District of Columbia)

*City, County, State, zip code *

Defendant: 3

Judge Gerald J. Pappert (Honorable)

* Name *

Federal Judge: Eastern District of Pennsylvania

* Current Job Title *

601 Market Street

*Current Work Address *

Philadelphia, Philadelphia County, Pennsylvania, 19106

*City, County, State, zip code *

Defendant 4:

Federal Bureau of Prisons

* Name *

Federal Correctional Institution Schuylkill / General counsel

* Current Job Title *

320 First Street, NW

* Current Work Address*

Washington D.C 20534 (District of Columbia)

City, County, State, zip Code

4 of 11

Defendant: 5

Scott Finley
* Name *

Warden / Custodian
* Current Job Title *

P.O Box 700
* Current Work Address *

Minersville, Schuylkill County, Pennsylvania, 17954-0759
* City, County, State, Zip Code *

III. STATEMENT OF FACTS

* A. I was arrested in Philadelphia, Philadelphia County, Pennsylvania (city, county, state) in January of 2014, jurisdiction should have remained with the City of Philadelphia / Commonwealth of Pennsylvania

* B. In April of 2014 the Federal Bureau of Investigations (F.B.I) adopted my case illegally without having proper jurisdiction by using a federal statute that is repugnant to the Constitution for the United States of America. Title 18 U.S.C. § 3231 which gives federal District courts jurisdiction over criminal matters is Unconstitutional. (Grand jury returned indictment on 3/27/14)

* C. The U.S. House of Representative committed a fraudulent act on May 12, 1947 when they voted on HR. Bill 3190, Public Law 80-772, which is commonly known as Title 18. U.S.C.. No quorum was present therefore they were not able to legally conduct business. Without this act I could have never been placed in federal custody because Title 18. U.S.C § 3231 would have never existed. On December 15, 2017 Honorable Judge Gerald J. Pappert sentenced me to 192 months of imprisonment relying on a statute (Title 18 U.S.C) that is repugnant

to the Constitution for the United States of America. Federal District Court Judges are well versed in History and Law, and should have rendered indictment defective and ordered immediate release. Executing this sentence violated Judge Gerald J. Pappert's "Oath of Affirmation", on which he swore to uphold the constitution. By using a repugnant statute this is simply equated to fraud or barratry. Judge Gerald J Pappert's court did not have competent jurisdiction under 18 U.S.C §3231 and 18 U.S.C. as a whole lacks constitutionality. The U.S Department of Justice and it's subsidiary Federal Bureau of Prisons under the direction of the U.S Attorney General, acted in execution of the commitment order issued by a court acting without competent jurisdiction and took me into custody for service of a sentence. I was then designated to Federal Correctional Institution Schuylkill under the care of Warden Purdue, (who has retired) and now Warden Scott Finley. In essence I was deprived of my right(s) to liberty without due process of Law. My 5th, 6th, 7th, 8th, 9th and 10th amendment rights secured by the constitution of the United States of America were violated. U.S Department of Justice, Federal Bureau of Prisons, U.S Attorney General and Warden Scott Finley #1 classified me according to nature of alleged offense committed for the service of a sentence under the system of discipline, care and treatment prescribed in 18 U.S.C §4081 (June 25th, 1948, c. 645, 62 Stat. 850), which was not passed in the presence of a quorum. #2 Execution of an unconstitutional sentence pursuant to 18 U.S.C. §4007 (June 25th, 1948, c. 645, 62 Stat. 848) #3 Oppress and control me under 18 U.S.C. §4001 (June 25th, 1948, c. 645, 62 Stat. 847) #4 They compel me to identify with a particular Religion under 18 U.S.C. §4081 (no quorum present)

#5 They compel me to pay the hundred dollar, financial responsibility for each count of indictment under 18 U.S.C 4081 #6 They compel me to peonage debt slavery and to enroll in programs under 18 U.S.C. § 4081 and §§ 4121-4129. Warden Scott Finley retaliates for seeking answers about HR 3190 Bill, Public Law 80-772 and the constitutionality of Title 18 U.S.C.. The Program statement of the Federal Bureau of Prison's derives it power and authority from Title 18 U.S.C, which gives power and authority to the Warden Scott Finley, which he delegates to subordinates. I was placed in special Housing for exercising a right that is secured and guaranteed by the Constitution. An inmate at FCI Schuylkill Mr Leon Stanton filed an affidavit in Schuylkill county, which was later federally adopted into the Middle District Court of Pennsylvania, challenging these same facts. I was placed in the Special Housing Unit for being in possession of this affidavit that Special Investigative Services Department at Federal Correctional Institution Schuylkill labeled fraudulent even after it was screened under the PLRA and deemed lawful and credible. This document was returned to Mr Leon Stanton (#61918-066) through this Middle District court to be amended. This court would have denied fraudulent of frivolous claims. With the Special Housing Unit being equated to the Institutions prison I am being falsely imprisoned by Warden Scott Finley but he refuses to acknowledge the proof of my claim or acknowledge / answer questions about H.R. Bill 3190, Public Law 80-772, Title 18 U.S.C. and abuses the remedy program which denies me due process being as though most courts mandate inmates to use the institu-

7 of 11

tions grievance program before allowing access to the courts. Warden Scott Finley, The Federal Bureau of Prisons and staff at Federal Correctional Institution Schuylkill conspire and abuse their power by throwing away, not processing or not answering remedies at all. Attorney General William Barr was in office at the time of my sentence and commitment. U.S House of Representatives (Members of the 80th Congress violated the Appropriations Clause mandated prescribed in Article I, §9, clause 7 of the Constitution for the United States of America when: #1 The Journal of the House failed to show that a majority or quorum of it's members when 18 U.S.C. § 4007 was passed or sign by presiding officers. #2 They allowed money to be drawn from the Treasury under 18 § 4007, a law that was put into effect without being duly enacted and without equal representation in Congress. Article I § 5, clause I and Article I § 7, clause 2-3 were violated along with the quorum clause by the U.S House of Representatives. The speaker of the House signed and enrolled, H.R. 3190 bill while both Houses of Congress were not sitting in regular or extra-ordinary session and the House nor Senate took no further action prior to their Dec 19, 1947 sie Die adjournment. They also failed to investigate the origin, or to disregard Public Law 80-772. These actions allowed changes and revisions to be made to the 1909 Federal Penal Code on June 25, 1948, and introduce H.R. Bill 3190 "A Bill to revise and codify, and enact into positive law Title 18 of the United States code, entitled "Crimes and Criminal procedure" in the House of Representatives to the committee on the Judiciary on April 24th 1947," (H. Rpt. 304; H. Journ. 295 and Cong. Rec. D556-D557)" which was not simply codification of

existing law, but made changes in existing law to transfer the federal courts jurisdiction in criminal cases from 28 U.S.C. § 371 (1940) to create a new jurisdictional provision under 18 U.S.C 3231 (1948) and it made conduct that was not a federal offense under 1909 U.S code become federal crimes, and changed the manner in which federal sentences are to be executed, of federal prisoners and detainees under Part III, sect. 4001-5001 of it's title".

I am imprisoned under an unconstitutional statute! (18 USC)

IV. LEGAL CLAIM(S)

Laws, Statutes, Consitutional rights violated;
"Lack of jurisdiction cannot be corrected by an order nunc pro tunc. The only proper office of a nunc pro tunc order is to correct a mistake in the records; it can not be used to rewrite history". See: (Central Laborer's Pension and Annuity Funds v. Griffe, 198 F.3d 642, 644 (7th cir 1999)). "Fraud committed in the procurement of jurisdiction" See: Freedman Brothers Furniture v. Dept. of Revenue, 109 Ill.2d 202, 486 N.E 2d 893 (1985) "where an order of judgement is based on a void order / judgement", Austin v. Smith, 312 F 2d 337, 346 (1962) Title 18 U.S.C, Title 18 U.S.C § 3231; Barratry - false claims and charges based on personage (fraud) in order to enforce statutory laws; Private prisons are illegal in Pennsylvania; Article I § 9 clause 7 (quorum), "where rights secured by the constitution are involved, there can be no rule making or legislation which abrogate them." Miranda v. Arizona 384, U.S 4336, 125; "The claim and exercise of constitutional right can not be converted into a crime". Miller v. Kansas 230 F2 486, 489; Crime to violate unalienable rights and inalienable rights under color of law; Article I § 5, clause I-2; Article I § 7, clause 2-3; Congress (80th) violated Article V provision for amending law; Article VI, Para 2, of the Constitution; 5 prong test for validating a Public Law; Hind's precedents of the House § 3458 (G.P.O. 1907); Supremacy

clause of Article VI; "If the legislative journals do not contain the requisite evidence of passage of a law, it is no law". Post v. Kendall County, 105 U.S. 667, 26 L.E.D 204 (1881); APA violation can only be equated as fraud U.S. v Pruden. 424 F.2D 1021 (1970) (Administrative procedure Act 5 U.S.C. 556(D) burden of proof); "If any tribunal (court) finds absence of proof of jurisdiction over person or subject matter that case must be dismissed" Louisville & Nashville RR v. Motley 211 U.S. 149 (1908); quorum clause violations on May 12. 1947, June 22 & 23 1948 rendering 18 USC § 3231 unconstitutional; General Journal, Bill vote clauses of the United States Constitution; 5th, 6th 7th, 9th, 10th amendments, such as due process, liberty, freedom etc...; False Imprisonment; Kidnapping; Threatening bodily harm; or any other offense; 18 U.S.C § 4081, § 4007, § 4001, §§ 4121-4129; Jefferson's Manual and Rules of the House of Representatives; §§ 52-55; Hind Precedents of the House of Representatives of the United States; Vol. IV §§ 2895, 2904, 2932, 2962, 2963; "The Constitution is the Supreme law of the land, and no act of Congress is of any validity which does not rest on authority conferred by that instrument". See, eg., Marbury v. Madison U.S. (Cranch) 137, 177 (1803; Scott v. Sanford, 19 How. 393, 401-402 (1897) United States v. Germaine, 99 U.S 508, 510 (1879); First Amendment of the Constitution.

V. Injury

Injuries sustained due to defendant(s) actions include; False Imprisonment; Kidnapping; threat of bodily harm; or other offense; violation of Due process rights; Subjected to harsher sentences for crimes [illegible], when jurisdiction was void; Violation of Unalienable and inalienable rights.

VI. Relief

Government entities and Judge Gerald J Pappert to provide proof they had/have jurisdiction pursuant to

the statute / law (§ 3231) they used to execute sentence. Produce congressional record and journal from both houses of congress showing that a quorum was present in order for them to conduct business. On May 12, 1947, June 22 & 23 of 1948. I request immediate release. I request monetary Damages for false imprisonment in the amount of $500.00 per day I have been incarcerated. I seek relief for mental anguish / Nominal damages include $150.00 for every day I have been incarcerated under false jurisdiction and punitive damages of $ 2,000,000.00 for being fraudulently and maliciously deceived. I request documents showing HR 3190 Bill was passed constitutionally pursuant Art 1 § 5 Cl. 1 and Art 1 § 7 Cl. 2. I Demand that all complaints, Affidavits, Indictments; adhesion contracts (Misrepresenting) Bill of exchange, unconstitutionally, deceitfully and illegally obtained, orders, judgements and/or actions associated with case Dockett no (14-55), Be Dismissed, expunged, Vacated, vitiated and void on its face, (Ab Initio) and Merits; or otherwise Be brought before a court of competent jurisdiction having lawful authority to hear such matters. I will also seek Damages / relief pursuant to and Invoke Doctrine / Rule of law for false imprisonment see: Tregvant v. City of Tampa.

on this 11th day of January 2021
All Rights Reserved

Without Malice,
Ronald Stone Bey Authorized
In Propria Persona Rep. (EX REL RONALD L. STONE JR)

VII. SIGNATURE

110611

Affidavit of Truth
In Support of
Civil Complaint.

I Ronald L. Stone Bey, Sui Juris, Jus Sanguinis and Authorized Representative for [EX RELATIONE: RONALD L STONE JR - 71310-066 do solemnly swear under the pains and penalties of perjury that everything stated in this Civil Complaint is the truth to the best of my knowledge and is supported by evidence, that these facts show a violation of law, and I am not filing this complaint to harass another person or any other improper use. All facts are related to my current incarceration and are back by law.

I will keep this court informed of my current address at all times while my lawsuit is being litigated. I agree to provide the clerk office with any changes of address immediately where case related papers may be served and I acknowledge that my failure to keep a current address on file with the clerk's office may result in dismissal of my case.

Ronald L Stone Bey, Sui Juris, In Propria Persona
Authorized Representative
[EX REL RONALD L. STONE JR]
* Signature of Plaintiff
January 11th 2021
* Date *

Exhibit 4

Harley G. Lappin

From: "Harley G. Lappin" <harley.lappin@usdoj.gov>
Sent: Monday, July 27, 2009 3:17 PM

Attention all Department Heads, there has been a large volume of inmate Requests for Administrative Remedies questioning the validity of the Bureau's authority to hold or classify them under 18 U.S.C. §§ 4081, et seq., (1948). On the claim that Public Law 80-772 was never passed or signed in the presence of a Quorum or Majority of both Houses of Congress as required by Article I, § 5, Clause 1 of the Constitution. Although most courts have, thus far, relied on Field v. Clark, 143 U.S. 649(1892) to avoid ruling on the merits of these claims, however, there have been some which have stated that they were not bound by the Field case, but those cases did not involve any Quorum Clause challenge. So out of an abundance of caution, I contacted the Office of Legal Counsel, the National Archives and the Clerk of the House of Representatives to learn that there is no record of any quorum being present during the May 12, 1947 vote on the H.R. 3190 Bill in the House (See 93 Cong.Rec. 5049), and the record is not clear as to whether there was any Senate vote on the H.R. 3190 Bill during any session of the 80th Congress. There is only one Supreme Court case that says in order for any bill to be valid the Journals of both Houses must show that it was passed in the presence of a Quorum. See United States v. Ballin, Joseph & Co., 144 U.S. 1, 3 (1892). The Clerk of the House states that the May 12, 1947 vote was a 'voice vote,' but the Parliamentarian of the House states that a voice vote is only valid when the Journal shows that a quorum is present and that it's unlawful for the Speaker of the House to sign any enrolled bill in the absence of a quorum. On May 12, 1947, a presence of 218 Members in the hall of the House was required to be entered on the Journal in order for the 44 Member 38 to 6 voice vote to be legal, it appears that the 1909 version of the Federal Criminal Code has never been repealed. Therefore, in essence, our only true authority is derived from the 1948 predecessor to Public Law 80-772. "Although adjudication of the constitutionality of congressional enactments has generally been thought to be beyond the jurisdiction of federal administrative agencies, this rule is not mandatory," according to the Supreme Court in the case of Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215 (1994). Therefore, the Bureau under the advise of the Legal Counsel feels that it is in the best interest of public safety to continue addressing all of these Administrative Remedy Requests by stating that only the Congress or courts can repeal or declare a federal statute unconstitutional.

Harley G. Lappin

Harley G. Lappin
Director, Federal Bureau of Prisons

Exhibit D

# TITLE 18 – 'Criminal Code' is Unconstitutional!

## THE GOVERNMENT HAS NOW CONCEDED THE CONSTITUTIONAL ISSUE OF THE INVALIDITY OF TITLE 18!! UPDATE ON TITLE 18 CLASS ACTION MOTION FOR SUMMARY JUDGMENT FILED ON SEPTEMBER 27, 2012

By Martin Michaelsson

A Motion for Summary Judgment was docketed by the Court of Appeals for the District of Columbia Circuit Court, requesting immediate relief for anyone on the petition.

The Motion is based on the un-refuted affidavits and proof that no Constitutional passage occurred for Title 18, the criminal code in the 80th Congress (1947-1948).

Since the Title also includes the only authorization to allow federal courts jurisdiction in any criminal case, whether Title 18, Title 21, or Title 26, 18 USC section 3231, then the motion requests relief for each person on the petition.

You have a limited amount of time to get on the petition. Contact us immediately!

"In a challenge to the Validity of Title 18 (Public Law 80-772), the government has now admitted that Public Law 80-772 is unconstitutional."

In a challenge to the Validity of Title 18 (Public Law 80-772), the government has now admitted that Public Law 80-772 is unconstitutional.

These admissions can be used in the Class Action on Title 18 and in other federal criminal cases.

The original class action petition was filed in the DC court on 2/23/2012. The judge refused to rule on the merits or make findings of fact and conclusions of law and now it is on appeal. An opening brief, a reply brief, and a Motion for Summary Judgment have been filed by our group. The government has waived argument on the issues presented.

A verified request for proof of claim was filed in a separate case on August 27, 2012 by our group. 18 stipulated answers were provided, to which the government waived argument on all stipulations, thus admitting the stipulations.

Included in those admissions were that "no quorum existed on May 12, 1947 and June 22 and 23, 1948", rendering 18 USC section 3231, which is the only never been heard on the merits; that no Supreme Court precedent exists for the government; and that the US attorney is violating the law by prosecuting any crime.

The government also admitted that no prior statute gives the federal courts jurisdiction; that the indictment is void on any federal criminal case; that the UNITED STATES OF AMERICA is a corporation; and that pursuant to the Administrative Procedures Act (APA), the government was required to answer the proof of claims.

Since the government violated the APA, then their silence can only be equated with fraud. See U.S. v. Pruden, 424 F.2d 1021 (1970). Under the authority of the Administrative Procedures Act, 5USC section 556(D)-Burden of Proof, "the proponent of a rule or order bears the burden of proof." The Supreme Court has stated that "if any tribunal (court) finds absences of proof of jurisdiction over person or subject matter, that case must be dismissed." Louisville & Nashville R.R. v. Motley, 211 U.S. 149 (1908).

The Attorney General was given 3 opportunities to respond to affidavits of fact and a request for a certified question of law related to the invalidity of Title 18. No response was made. In U.S. v. Kis, 658 F.2d 526 (7th Cir. 1981), the court held: "Indeed, no more than that, [Affidavits], is necessary to make the prima facie case." Id at 536. "Moreover the threshold of relevance is a low one." Id at 537. "The burden is therefore on the Respondent who must come forward with special facts to support a legally sufficient rebuttal or defense." Id at 538-39. The stipulated answers are now admitted.

Included in the stipulated facts the government has now admitted are:

1. An internal memo- by Harley G. Lappin

be valid the Journals of both Houses must show that it was passed in the presence of a Quorum. See United States v. Balin, Joseph & Co., 144 U.S. 1, 3 (1892). The Clerk of the House states that the May 12, 1947 vote was a 'voice vote,' but the Parliamentarian of the House states that a voice vote is only valid when the Journal shows that a quorum is present and that it's unlawful for the Speaker of the House to sign any enrolled bill in the absence of a quorum. On May 12, 1947, a presence of 218 Members in the hall of the House was required to be entered on the Journal in order for the 44 Member 38 to 6 voice vote to be legal."

2. A letter from Jeff Trandahl, clerk of the House to Mr. Charles R. Degan dated June 28, 2000, in which he states: "Congress was in session on June 1,3,4,7-12 and 14-19, 1948, however Title 18 was not voted on at this time."

3. A letter from Karen L. Haas, clerk of the House, dated September 11, 2008, in which she stated: "After conducting a thorough examination of the journals, I found no entry in the journal of the House of any May 12, 1947 vote on the H.R. 3190 bill..."

4. A letter by Nancy Erickson to Mr. Wayne E. Matthews dated March 9, 2009 in which she stated that "I asked the Senate Historian's office to review the correspondence you enclosed, and they were able to verify that no action was taken by the Senate on H.R. 3190 prior to the December 19, 1947 sine die adjournment.

5. A letter dated August 24, 2010 from the Office of the Clerk of the House of Representatives which stated: "Our office has conducted research of the House Journal and the Congressional Record in regards to HR 3190 and the voice vote that was taken on May 12, 1947. After researching these official proceedings of the US House of Representatives we have been unable to find the names of the 44 Members who responded to the voice vote."

Pursuant to their oath of office, the courts are required to follow the Constitution and Supreme Court precedent.

"YRIITL" has been serving the American community for over 7 years to secure the very best in Information Providers to assist you and teach you to deal with court related matters. Our Students are simply the best informed, bar none.

For more information Contact Martin Michaelsson: MM@YourRemedyIsInTheLaw.



Exhibit C

# Congressional Record

United States of America

PROCEEDINGS AND DEBATES OF THE 80th CONGRESS, SECOND SESSION

JAN 18 2018

## SENATE

### MONDAY, JULY 26, 1948

The Senate reassembled this day in its Chamber at the Capitol, in the city of Washington, in pursuance of the proclamation of the President of the United States of the 15th day of July 1948.

ARTHUR VANDENBERG, President pro tempore, called the Senate to order at 12 o'clock noon.

Rev. Bernard Braskamp, D. D., pastor of the Gunton-Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

O Thou God of infallible wisdom, we have entered upon days which are fraught with perplexing problems and heavy responsibilities, but also with glorious opportunities and possibilities.

We pray that we may have the interpreting light and the clear and confident leading of Thy spirit in all our deliberations and decisions.

May the ideals and principles of our blessed Lord not only stir our emotions but our wills, and may every lofty God-inspired sentiment be translated into action and achievement.

Grant that it may be the goal of all our aspirations to glorify Thy great and holy name and to build Thy kingdom of peace and good will among men and nations.

Hear us for the sake of the Christ. Amen.

The PRESIDENT pro tempore. The proclamation of the President reconvening the Congress will be read by the clerk.

The Chief Clerk (Edward E. Mansur, Jr.) read the proclamation, as follows:

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA—A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive;

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this 15th day of July, in the year of our Lord 1948, and of the independence of the United States of America the one hundred and seventy-third.

HARRY S. TRUMAN.

By the President:

G. C. MARSHALL,
*Secretary of State.*

CALL OF THE ROLL

Mr. WHERRY. I suggest the absence of a quorum.

The PRESIDENT pro tempore. The clerk will call the roll.

The Chief Clerk called the roll, and the following Senators answered to their names:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | ~~O'Mahoney~~ |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnston, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Cordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Feazel | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

Mr. WHERRY. I announce that the Senator from Minnesota [Mr. BALL], the Senator from Ohio [Mr. BRICKER], the Senator from Delaware [Mr. BUCK], the Senator from South Dakota [Mr. BUSHFIELD], the Senator from Vermont [Mr. FLANDERS], the Senator from Oregon [Mr. MORSE], and the Senator from Iowa [Mr. WILSON] are necessarily absent.

The Senator from New Hampshire [Mr. BRIDGES] is detained on official business.

The Senator from Idaho [Mr. DWORSHAK] is absent on official state business.

The Senator from New York [Mr. IVES] is absent because of illness in his family.

The Senator from Nevada [Mr. MALONE] is absent on official committee business of the Committee on Public Works.

Mr. LUCAS. I announce that the Senator from New Mexico [Mr. CHAVEZ] is unavoidably detained.

The Senator from Arkansas [Mr. FULBRIGHT], the Senator from Nevada [Mr. MCCARRAN], the Senator from Tennessee [Mr. MCKELLAR], the Senator from Maryland [Mr. TYDINGS], and the Senator from New York [Mr. WAGNER] are necessarily absent.

The PRESIDENT pro tempore. Seventy-eight Senators having answered to their names, a quorum is present.

THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent that, without reading, the Journal of the proceedings of the Senate for the calendar days Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, be approved.

The PRESIDENT pro tempore. Without objection, the order is made.

ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had previously been signed by the Speaker of the House of Representatives:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

Exhibit C

relating to crimes and criminal procedure.

A bill similar to this passed the House unanimously in the closing days of the Seventy-ninth Congress but was not acted upon in the other body. I believe that I should make a brief statement explaining the method of drafting the bill and its scope.

The work on this revision was commenced under the supervision of the former Committee on Revision of the Laws in 1944. That committee engaged the services of the West Publishing Co. and the Edward Thompson Co., two lawpublishing companies that have assisted in the preparation of the original United States Code and every supplement and new edition of that code. These companies have worked continuously and closely with the Committee on Revision of the Laws and, since the beginning of this Congress, with the Committee on the Judiciary, and counsel for the committees. In turn, the companies supplemented their regular editorial staffs by engaging the services of a reviser who was long familiar with the operation and administration of these laws. In addition they assembled an outstanding group of men as an advisory committee who labored unselfishly toward achieving the best revision of the criminal laws. A number of these men—members of the bench and bar of the country—appeared before the Committee on the Judiciary and testified that in their opinion this bill is eminently worthy of favorable action by the Congress. The Department of Justice also designated a representative of the Criminal Division to cooperate in the preparation of this revision.

Several preliminary drafts of the revision were studied most carefully, word for word and line for line, by these various groups, culminating in the bill now up for consideration.

At the last Congress the Committee on the Revision of the Laws, through its chairman, appeared before a subcommittee of the Judiciary Committee and. in a number of sessions, pointed out and explained every change in substantive law made by the bill which had been reported by that committee. After full discussion the Committee on the Judiciary unanimously endorsed the then pending bill, which is similar to the bill before us today, and that bill was passed unanimously by the House on July 16, 1946, in the closing days of the session. The bill had received the endorsement of the Department of Justice and the Section on Criminal Law of the American Bar Association. I believe that I am not engaging in overstatement when I say that no bill of this magnitude ever came to the House with such a background of careful and painstaking preparation and critical appraisal by so many leaders in this branch of the law.

So much for the method of preparation—and I want to express our appreciation to the learned members of the bench and bar who contributed so much of their talent and time toward this work.

Now as to the scope of the bill.

This bill is a restatement of the Federal laws relating to crimes and criminal procedure in effect on April 15, 1947. Most of these laws are now set forth in title 18 of the United States Code and are based upon the 1909 Criminal Code—which was the last revision of criminal laws enacted by the Congress—and subsequent laws on the subject. Of course, title 18 of the United States Code is only prima facie evidence of the law which is contained in numerous volumes of the Statutes at Large. Upon the enactment of this bill it will no longer be necessary to have recourse to those numerous volumes. All the law will be set out in one place and amendments in the future will be facilitated because of the orderly arrangement of the laws within one title.

Just a year ago with the adoption of the Federal Rules of Criminal Procedure many statutes became obsolete or superseded, but, of course, were not specifically repealed. These together with other obsolete, superseded, redundant, and repetitious statutes are repealed by this bill, and the effect of the rules is clearly set forth in the revision.

The law is restated in simple, clear, and concise language. Many sections of existing statutes are consolidated to facilitate finding the law. The advantages of codes are too well known to require any lengthy exposition on my part at this time.

You will find no radical changes in the philosophy of our criminal law in this bill. There is no attempt made here to coddle criminals and wrongdoers. Nor is this bill a subject of partisanship. Its predecessor which passed the House unanimously in the Seventy-ninth Congress had been reported unanimously by the Committee on the Revision of the Laws and had received the unanimous endorsement of the Committee on the Judiciary. This bill has also been reported unanimously by the Committee on the Judiciary.

Favorable action by the House today will constitute a big step toward an orderly and systematic code of laws and will prove a boon to the bench and bar and the public generally.

Mr. COLE of New York. Mr. Speaker, I rise in opposition to the amendment only for the purpose of suggesting that to some extent the gentleman's amendment is in violation of the understanding on which these bills were submitted to the House for passage today. It was understood that they were simply codifications of existing law and undertook to make no changes in existing law.

I understand that probably the gentleman's amendment has considerable merit, and I see several members of the Committee on the Judiciary on the floor. I certainly am not in a position and have no desire to raise any criticism of procedure or objection to it, but it does seem to be a violation of the understanding under which these bills were submitted.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield.

Mr. ROBSION. I pointed out when I made my statement with reference to the first five bills that we considered, that they were purely a codification. But there are some changes in this bill (H. R. 3198), I mean, for instance, when we were considering this bill the Philippine Islands were a part of the United States. We had many laws applicable to the Philippine Islands when she was a part of the United States that are no longer in force because the Philippines are no longer a part of the United States. Those laws we cut out.

We also found going through criminal law with the Department of Justice, the bar association, and the representatives of the Federal courts that Congress has passed many acts almost identical. In some of them the penalty was fixed at 5 years and in others, fixed at 6 months. We thought it wise to clarify and harmonize these.

Mr. COLE of New York. Mr. Speaker, so long as these distinguished gentlemen of the Judiciary Committee are satisfied with this procedure and with this bill, I shall not use the time of the House further.

Mr. MICHENER. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield to the gentleman from Michigan.

Mr. MICHENER. Mr. Speaker, I hold in my hand a copy of the committee report which I wish the Members would look at carefully. Where there is any indication of change every one of these questions is fully explained in the report. If we start to amend now we are liable to get into trouble. I favor the bill suggested by the gentleman from Pennsylvania but I hope it will not be interjected here because it will upset the procedure which must be followed if we ever hope to accomplish this purpose.

Mr. COLE of New York. Is the amendment offered by the gentleman from Pennsylvania in the report accompanying this bill to which he has referred?

Mr. MICHENER. No; it is not.

The SPEAKER. The question is on the amendment offered by the gentleman from Pennsylvania [Mr. WALTER].

The question was taken; and the Speaker being in doubt, the House divided, and there were—ayes 38, noes 6.

So the amendment was agreed to.

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

EXTENSION OF REMARKS

Mr. STEVENSON asked and was given permission to extend his remarks in the Appendix of the RECORD and include a report to his constituents.

REVISION OF TITLE 28, UNITED STATES CODE

The Clerk called the bill (H. R. 3214) to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

The SPEAKER. Is there objection to the present consideration of the bill?

Mr. CURTIS. Mr. Speaker, reserving the right to object, this bill H. R. 3214 deals with the judiciary and judicial procedure and I wish to call attention merely to one part of it. That is the part

App. 1

or a lesser amount of excessive profits than that determined against him. The proceeding was declared to be a trial de novo. They are heard and decided, as in tax cases, on the issues drawn and pleaded by the pleadings filed.

The above history clearly indicates that Congress created a court and made it quite obvious that the creation of a court was intended.

Mr. KEATING. Mr. Speaker, this bill so forcefully presented by the distinguished gentleman from Kentucky [Mr. ROBSION], who has labored extensively and ably in the field of codification of the laws, deserves the support of this body.

The most important change in existing law is to make the Tax Court a judicial rather than an administrative body. The hearings before the Committee on the Judiciary, especially the testimony of the present presiding judge of the court, convince me beyond a doubt that this change should be made.

I am happy that the committee has accepted an amendment at the end of section 2560 to provide as follows:

No qualified person shall be denied admission before such court because of his failure to be a member of any profession or calling.

Considerable doubt has been raised that the conversion of this body to a court of record might prevent practice before it by anyone other than a member of the bar. As a lawyer, I would be the last to contend that a legal training is not highly desirable for a practitioner before the Tax Court. In all fairness, however, we must recognize that the litigation which comes before that court is often of a peculiarly technical character which circumstances may dictate can best be presented by a certified accountant, or in part by a lawyer and in part by one skilled in figures. To compel membership in the bar is a condition precedent to practice in this court would be a departure from precedent which I do not feel prepared to take.

In many of these important cases it is desirable and in the interests of the litigant for lawyers and accountants to associate in the prosecution of the case. It would be a mistake, in my judgment, for Congress to interfere with this practice. The situation regarding this court seems to be quite different from other judicial bodies in this respect. To deprive accountants by legislative enactment of the right to practice before the Tax Court after it becomes a judicial body, while perhaps advantageous to lawyers, would deprive qualified nonlawyers of a valuable right without a showing of correlative advantage to the litigants, who in good conscience should be the object of our chief concern in the consideration of this legislation.

I urge support of this amendment and this bill.

The SPEAKER. The question is on suspending the rules and passing the bill.

The question was taken; and on a division (demanded by Mr. DINGELL) there were ayes 91, noes 12.

Mr. DINGELL. Mr. Speaker, I object to the vote on the ground that a quorum is not present and make the point of order that a quorum is not present.

The SPEAKER. Obviously a quorum is not present.

The Doorkeeper will close the doors, the Sergeant at Arms will notify absent Members, and the Clerk will call the roll.

The question was taken; and there were—yeas 342, nays 23, not voting 65, as follows:

[Roll No. 100]

YEAS—342

Abernethy
Albert
Allen, Calif.
Allen, Ill.
Allen, La.
Almond
Andersen, H. Carl
Andresen, August H.
Andrews, Ala.
Angell
Arnold
Auchincloss
Bakewell
Banta
Barrett
Bates, Ky.
Battle
Beall
Beckworth
Bell
Bennett, Mo.
Bishop
Blackney
Blatnik
Boggs, Del.
Boggs, La.
Bonner
Boykin
Bradley
Bramblett
Brehm
Brooks
Brophy
Brown, Ga.
Brown, Ohio
Bryson
Buchanan
Buck
Buckley
Buffett
Bulwinkle
Burke
Burleson
Busbey
Byrne, N. Y.
Canfield
Carroll
Carson
Case, N. J.
Case, S. Dak.
Celler
Chadwick
Chapman
Chelf
Chenoweth
Chiperfield
Church
Clason
Clements
Clevenger
Clippinger
Coffin
Cole, Kans.
Colmer
Combs
Cooley
Corbett
Cotton
Cox
Cravens
Crawford
Crosser
Crow
Cunningham
Curtis
Dague
Davis, Ga.
Davis, Tenn.
Davis, Wis.
Dawson, Utah
Deane
Delaney
Devitt
D'Ewart
Dirksen
Dolliver
Domengeaux
Dondero
Donohue
Dorn
Drewry
Elliott
Ellis
Ellsworth
Elsaesser
Engel, Mich.
Engle, Calif.
Evins
Fallon
Feighan
Fenton
Fernandez
Fisher
Flannagan
Fletcher
Fogarty
Foote
Fulton
Gallagher
Gamble
Gary
Gathings
Gavin
Gillette
Gillie
Goff
Goodwin
Gordon
Gore
Gorski
Gossett
Graham
Granger
Grant, Ala.
Griffiths
Gwinn, N. Y.
Gwynne, Iowa
Hagen
Hale
Hall, Leonard W.
Halleck
Hand
Hardy
Harless, Ariz.
Harness, Ind.
Harris
Harrison
Havenner
Hays
Hedrick
Heffernan
Herter
Heselton
Hess
Hill
Hinshaw
Hobbs
Hoeven
Hoffman
Holifield
Holmes
Horan
Howell
Huber
Jackson, Calif.
Jackson, Wash.
Jarman
Javits
Jenkins, Ohio
Jenkins, Pa.
Jennings
Jensen
Johnson, Calif.
Johnson, Ill.
Johnson, Ind.
Johnson, Tex.
Jonkman
Judd
Karsten, Mo.
Kearney
Kearns
Keating
Keefe
Kefauver
Kennedy
Keogh
Kersten, Wis.
Kilday
Kirwan
Klein
Kunkel
Landis
Lane
Larcade
Latham
Lea
LeCompte
LeFevre
Lemke
Lewis
Lodge
Love
Lucas
Lusk
Lyle
McConnell
McCormack
McCowen
McDonough
McDowell
McGarvey
McGregor
McMahon
McMillan, S. C.
McMillen, Ill.
Macy
Madden
Mahon
Maloney
Manasco
Mansfield, Mont.
Marcantonio
Martin, Iowa
Mathews
Meade, Md.
Merrow
Meyer
Michener
Miller, Calif.
Miller, Conn.
Miller, Md.
Miller, Nebr.
Mills
Monroney
Morgan
Morris
Morrison
Morton
Muhlenberg
Mundt
Murdock
Murray, Tenn.
Murray, Wis.
Nixon
Nodar
Norblad
Norrell
O'Brien
O'Hara
O'Konski
O'Toole
Pace
Passman
Patman
Patterson
Peterson
Phillips, Tenn.
Pickett
Ploeser
Poage
Potts
Poulson
Preston
Price, Fla.
Price, Ill.
Priest
Rabin
Rains
Ramey
Rankin
Rayfiel
Redden
Reed, Ill.
Rees
Reeves
Rich
Richards
Riehlman
Riley
Rivers
Rizley
Robertson
Robsion
Rockwell
Rogers, Fla.
Rogers, Mass.
Rohrbough
Rooney
Ross
Russell
Sabath
Sadlak
Sadowski
St. George
Sanborn
Sarbacher
Sasscer
Schwabe, Mo.
Schwabe, Okla.
Scoblick
Scott, Hardie
Scott, Hugh D., Jr.
Seely-Brown
Sikes
Simpson, Ill.
Simpson, Pa.
Smathers
Smith, Kans.
Smith, Maine
Smith, Va.
Smith, Wis.
Snyder
Somers
Spence
Springer
Stanley
Stefan
Stevenson
Stigler
Stockman
Stratton
Sundstrom
Taber
Talle
Teague
Thomas, N. J.
Thomas, Tex.
Thomason
Tibbott
Tollefson
Towe
Trimble
Twyman
Vail
Van Zandt
Vursell
Walter
Welchel
Wheeler
Whitten
Whittington
Williams
Wilson, Ind.
Wilson, Tex.
Winstead
Wolcott
Wolverton
Wood
Woodruff
Worley
Youngblood
Zimmerman

NAYS—23

Anderson, Calif.
Byrnes, Wis.
Camp
Cannon
Cooper
Dingell
Doughton
Eberharter
Folger
Forand
Gearhart
Grant, Ind.
Hull
Jenison
Kean
King
Knutson
Lynch
Mason
Owens
Phillips, Calif.
Reed, N. Y.
Wigglesworth

NOT VOTING—65

Andrews, N. Y.
Arends
Barden
Bates, Mass.
Bender
Bennett, Mich.
Bland
Bloom
Bolton
Butler
Clark
Cole, Mo.
Cole, N. Y.
Coudert
Courtney
Dawson, Ill.
Douglas
Durham
Eaton
Elston
Fellows
Fuller
Gifford
Gregory
Gross
Hall, Edwin Arthur
Hart
Hartley
Hébert
Hendricks
Hope
Johnson, Okla.
Jones, Ala.
Jones, N. C.
Jones, Ohio
Jones, Wash.
Kee
Kelley
Kerr
Kilburn
Lanham
Lesinski
Mack
MacKinnon
Mansfield, Tex.
Meade, Ky.
Mitchell
Norton
Peden
Pfeifer
Philbin
Plumley
Powell
Rayburn
Scrivner
Shafer
Sheppard
Short
Smith, Ohio
Taylor
Vinson
Vorys
Wadsworth
Welch
West

So (two-thirds having voted in favor thereof) the rules were suspended and the bill was passed.

The Clerk announced the following pairs:

Additional general pairs:

Mr. Arends with Mr. Sheppard.
Mr. Bates of Massachusetts with Mr. Bloom.
Mr. Hope with Mr. Courtney.
Mr. Hartley with Mr. Gregory.
Mr. Jones of Washington with Mr. Hébert.
Mr. Gifford with Mr. West.
Mr. Mitchell with Mr. Jones of North Carolina.
Mr. Eaton with Mr. Vinson.
Mr. Mack with Mr. Hendricks.
Mr. Shafer with Mr. Kee.
Mr. Jones of Ohio with Mr. Kerr.

Mr. RANKIN changed his vote from "nay" to "yea."

The result of the vote was announced as above recorded.

The doors were opened.

A motion to reconsider was laid on the table.

Mr. ROBSION. Mr. Speaker, I ask unanimous consent that the printing of the bill in the RECORD be dispensed with but that the amendments be printed.

The SPEAKER. Is there objection to the request of the gentleman from Kentucky?

There was no objection.

[PUBLIC LAW 772]
[CHAPTER 645]

H. R. 3190

LAWS BRANCH

Eightieth Congress of the United States of America
At the Second Session

Begun and held at the City of Washington on Tuesday, the sixth day of January, one thousand nine hundred and forty-eight

# AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Title 18 of the United States Code, entitled "Crimes and Criminal Procedure", is hereby revised, codified, and enacted into positive law, and may be cited as "Title 18, U. S. C., § ——", as follows:

TITLE 18—CRIMES AND CRIMINAL PROCEDURE

| Part | Sec. |
|---|---|
| I. CRIMES | 1 |
| II. CRIMINAL PROCEDURE | 3001 |
| III. PRISONS AND PRISONERS | 4001 |
| IV. CORRECTION OF YOUTHFUL OFFENDERS | 5001 |

PART I—CRIMES

| Chapter | Sec. |
|---|---|
| 1. General provisions | 1 |
| 3. Animals, birds and fish | 41 |
| 5. Arson | 81 |
| 7. Assault | 111 |
| 9. Bankruptcy | 151 |
| 11. Bribery and graft | 201 |
| 13. Civil rights | 241 |
| 15. Claims and services in matters affecting government | 281 |
| 17. Coins and currency | 331 |
| 19. Conspiracy | 371 |
| 21. Contempts constituting crimes | 401 |
| 23. Contracts | 431 |
| 25. Counterfeiting and forgery | 471 |
| 27. Customs | 541 |
| 29. Elections and political activities | 591 |
| 31. Embezzlement and theft | 641 |
| 33. Emblems, insignia, and names | 701 |
| 35. Escape and rescue | 751 |
| 37. Espionage and censorship | 791 |
| 39. Explosives and combustibles | 831 |
| 41. Extortion and threats | 871 |
| 43. False personation | 911 |
| 45. Foreign relations | 951 |
| 47. Fraud and false statements | 1001 |
| 49. Fugitives from justice | 1071 |
| 51. Homicide | 1111 |
| 53. Indians | 1151 |
| 55. Kidnaping | 1201 |
| 57. Labor | 1231 |
| 59. Liquor traffic | 1261 |
| 61. Lotteries | 1301 |
| 63. Mail fraud | 1341 |
| 65. Malicious mischief | 1361 |
| 67. Military and Navy | 1381 |
| 69. Nationality and citizenship | 1421 |
| 71. Obscenity | 1461 |

App. 3

H. R. 3190—240

| Date | Statutes at Large | | | | U. S. Code | |
|---|---|---|---|---|---|---|
| | Chapter | Section | Volume | Page | Title | Section |
| 1940—Continued | | | | | | |
| Mar. 28 | 73 | | 54 | 90 | 18 | 97 |
| Apr. 17 | 101 | | 54 | 110 | 26 | 421 |
| Apr. 30 | 164 | | 54 | 171 | 18 | 86 |
| Do | 176 | 1-3 | 54 | 175, 176 | 18 | 733, 733a, 733b |
| June 6 | 241 | | 54 | 234 | 18 | 466 |
| June 8 | 276 | | 54 | 249 | 25 | 217a |
| Do | 296 | | 54 | 265, 266 | 18 | 412a |
| June 11 | 322 | | 54 | 304 | 18 | 451 |
| Do | 326 | 1-3 | 54 | 306 | 18 | 469-471 |
| June 13 | 350 | | 54 | 391 | 18 | 253 |
| June 26 | 426 | | 54 | 571, 572 | 18 | 76a |
| June 28 | 439 | 1-5 | 54 | 670, 671 | 18 | 9-13 |
| June 29 | 445 | | 54 | 688 | 18 | 687 |
| Do | 449 | 1-6 | 54 | 692, 693 | 18 | 641, 718, 719, 723a, 753k |
| Do | 455 | | 54 | 695 | 12 | 588b |
| July 10 | 567 | | 54 | 747 | 18 | 587 |
| July 19 | 640 | 1, 3, 5, 6 | 54 | 767, 772 | 18 | 61a, 61j, 61m-1, 61t |
| Oct. 8 | 762 | | 54 | 1021 | 18 | 201 |
| Oct. 9 | 777 | 6 | 54 | 1028 | 18 | 383-385 |
| Do | 785 | 1-5 | 54 | 1058, 1059 | 18 | 576, 576a-576d |
| Oct. 14 | 872 | | 54 | 1134 | 18 | 306a |
| Do | 876 | 346 (a-h), (l), 347 | 54 | 1163-1168 | 8 | 746 (a-h), (l), 747 |
| Oct. 17 | 897 | 1-6 | 54 | 1201-1204 | 18 | 14, 14 note 15-17 |
| Nov. 30 | 926 | | 54 | 1220, 1221 | 50 | 101, 104-106 |
| 1941—May 31 | 165 | 1 (part) | 55 | [a] 220 | 18 | 647 |
| June 14 | 204 | | 55 | 252 | 18 | 753f |
| June 21 | 212 | | 55 | 254, 255 | 18 | 746a, 746b |
| June 26 | 251 | 10 | 55 | 365 | 12 | 1731 (d) |
| July 9 | 253 | | 55 | 451 | 18 | 396a |
| July 11 | 287 | | 55 | 562 | 18 | 418a |
| Aug. 18 | 306 | 1-6 | 55 | 631, 632 | 18 | 419a, 419b, 419c, 419d |
| Aug. 21 | 385 | | 55 | 655 | 50 | 104 |
| Oct. 31 | 463 | | 55 | 743, 744 | 18 | 753f |
| Nov. 15 | 472 | 1, 2 | 55 | 763, 764 | 18 | 106, 107 |
| Nov. 21 | 492 | | 55 | 779 | 18 | 669 |
| Dec. 22 | 616 | | 55 | 853 | 18 | 521 |
| Dec. 31 | 643 | 1-3 | 55 | 876, 877 | 18 | 503, 503, note, 504 |
| 1942—Mar. 7 | 160 | | 56 | 141 | 18 | 361 |
| Mar. 10 | 178 | 1 (part) | 56 | [b] 155 | 18 | 647 |
| Mar. 21 | 191 | | 56 | 173 | 18 | 97a |
| Mar. 27 | 199 | 1104 | 56 | 184 | 50 App. | 641e |
| May 9 | 295 | 1 | 56 | 271, 272 | 18 | 682 |
| Aug. 24 | 554 | 1, 2 | 56 | 747, 748 | 18 | 590a |
| Sept. 16 | 561 | [c] 214 | | | 50 | 344 |
| Dec. 24 | 822 | 1, 2, 3 | 56 | 1067 | 18 | 420f, 420g, 420h |
| Do | 824 | | 56 | 1087, 1088 | 50 | 101 |
| 1943—June 30 | 179 | 1 (part) | 57 | [d] 295 | 18 | 647 |
| Nov. 22 | 302 | | 57 | 591 | 18 | 87 |
| 1944—Mar. 4 | 83 | 1, 2, 3, 4 | 58 | 111 | 18 | 472, 473, 474 |
| Apr. 1 | 161 | | 58 | 149, 150 | 18 | 263a |
| Apr. 4 | 163 | | 58 | 158 | 18 | 409 |
| July 1 | 358 | 10 (a), (d), (e), 10 (b) | 58 | 667, 668 | 41 | [e] 119 |
| Do | 368 | | 58 | 687 | 18 | 590a |
| Sept. 27 | 425 | | 58 | 752 | 18 | 294 |
| Oct. 3 | 479 | 26 | 58 | 781 | 18 | 590a |
| Dec. 20 | 621 | 4 | 58 | 837 | 12 | 1150a |
| Dec. 22 | 706 | 1, 2, 3 | 58 | 914, 915 | 18 | 62, 62a, 62b |
| 1945—Apr. 30 | 103 | | 59 | 101 | 18 | 97b |
| May 15 | 126 | | 59 | 164 | 18 | 618a |
| June 8 | 178 | 1, 2, 3 | 59 | 234, 236 | 18 | 241, 241a, 242 |
| July 31 | 339 | 9 | 59 | 614 | 31 | 804b |
| Sept. 24 | 383 | 1, 2, 3 | 59 | 536 | 18 | 608 |
| 1946—May 15 | 268 | | 60 | 182 | 18 | 618a |
| July 3 | 537 | | 60 | 420 | 18 | 17 note |
| | | | | | 18 | 420a-420e-1 |
| | | | | | 20 | 52 note, 101 note, 151 note |
| July 10 | 547 | | 60 | 524, 525 | 18 | 641 |
| July 24 | 606 | | 60 | 656 | 18 | 409-411 |
| Aug. 2 | 734 | | 60 | 790 | 18 | 606a |
| Aug. 14 | 964 | [f] 3 | 60 | 1,064 | 7 | 1,026 |
| 1947—Apr. 16 | 59 | | 61 | 62 | 18 | 411 |
| May 16 | 72 | | 61 | 97 | 18 | 744b-1 |
| June 21 | 111 | | 61 | 134 | 18 | 244 |
| June 23 | 120 | 304 | 61 | 160 | 7 | 261 |

[a] First proviso, only, appearing on this page.
[b] First proviso, only, appearing on this page.
[c] As added by Act, Apr. 1, 1944, ch. 160 (part), 58 Stat. 148.
[d] Second proviso, only, appearing on this page.
[e] First, second, third, and sixth paragraphs, only, of this section of title 41 of the United States Code, 1940 edition.
[f] Only the provisions amending section 53 of Act, July 22, 1937, ch. 517, title IV, 50 Stat. 531, 532.

Joseph W. Martin Jr.
*Speaker of the House of Representatives.*

A. H. Vandenberg
*President of the Senate pro tempore.*

Approved
June 25 1948
Harry S. Truman
12:23 P.M. E.D.T.

App. 4

HISTORY OF BILLS ENACTED INTO PUBLIC LAW (80TH CONG., 2D SESS.)—Continued

| Title | Bill No. | Date introduced | Committees—hearings | | Date reported | | Report No. | | Page of Congressional Record of passage | | Date of passage | | Public law | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | House | Senate | House | Senate | House | Senate | House | Senate | House | Senate | Date approved | No. |
| To amend the Railroad Retirement Act of 1937, to increase certain annuities, and the Railroad Unemployment Insurance Act with respect to taxes levied thereunder. | H. R. 6766 (S. 2782) | June 1 | IFC* | LPW | June 2 | June 9 | 2154 | 1574 | 7436 | 7933 | June 8 | June 12 | June 23 | 744 |
| Amending District of Columbia Code, relative to admissibility of testimony. | S. 1266 | May 12, 1947 | DC | DC | June 3 | May 29, 1947 | 2188 | 212 | 7455 | 7010 | June 8 | June 16, 1947 | June 24 | 745 |
| To increase salary of Coordinator of Federal Agencies in Puerto Rico. | S. 2508 | Apr. 15 | PL | IIA | June 4 | May 12 | 2208 | 1279 | 8484 | 6294 | June 16 | May 24 | June 24 | 746 |
| Permitting mining locations under United States mining laws within the game sanctuary of the Harney National Forest. | H. R. 2867 | Mar. 31, 1947 | PL | IIA | July 14, 1947 | June 11 | 912 | 1597 | 9596 | 7944 | July 21, 1947 | June 12 | June 24 | 747 |
| To amend Veterans Regulation No. 1 (a), pts. I and II, to establish a presumption of service connection for chronic and tropical diseases. | H. R. 3889 | June 18, 1947 | VA | Fin* | July 8, 1947 | June 7 | 808 | 1536 | 9609 | 7924 | July 21, 1947 | June 12 | June 24 | 748 |
| To amend the Food and Drug Act, to authorize seizure of adulterated or misbranded products. | H. R. 4071 | July 2, 1947 | IFC | IFC* | July 8, 1947 | Apr. 30 | 807 | 1221 | 134 | 8239 | Jan. 13 | June 15 | June 24 | 749 |
| To permit free entry of crude or broken limestone to be used in manufacture of fertilizer. | H. R. 5275 | Feb. 4 | WM | Fin | Feb. 23 | Apr. 15 | 1415 | 1129 | 1610 | 8238 | Feb. 24 | June 15 | June 24 | 750 |
| Conferring jurisdiction over Fort Des Moines Veterans' Village upon the State of Iowa. | H. R. 6188 | Apr. 12 | PW* | PW | Apr. 15 | June 10 | 1747 | 1585 | 5199 | 7941 | May 3 | June 12 | June 24 | 751 |
| Relative to admission of Filipinos to the U. S. Naval Academy. | H. R. 6698 | May 25 | AS* | AS | June 8 | June 17 | 2258 | 1766 | 8489 | 8755 | June 16 | June 18 | June 24 | 752 |
| Navy appropriations for 1949 | H. R. 6772 | June 2 | App* | App* | June 2 | June 14 | 2135 | 1621 | 7073 | 8301 | June 3 | June 15 | June 24 | 753 |
| To ratify contract for purchase of certain mineral land from the Choctaw and Chickasaw Indians. | S. J. Res. 203 (H. J. Res. 363) | Apr. 2 | PL | IIA | May 5 | May 10 | 1868 | 1266 | 8214 | 6290 | June 14 | May 24 | June 24 | 754 |
| Providing for a National Institute of Dental Research. | H. R. 6726 (S. 176) | May 27 | IFC* | LPW | June 2 | July 7, 1947 | 2158 | 436 | 7415 | 7934 | June 8 | June 12 | June 24 | 755 |
| To provide for the issuance of free passes on railroads to official watch inspectors. | S. 2192 | Feb. 20 | IFC | IFC | June 17 | June 8 | 2394 | 1538 | 8954 | 7924 | June 18 | June 12 | June 24 | 756 |
| To increase certain benefits payable under the Longshoremen's and Harbor Workers' Compensation Act. | S. 2237 (H. R. 6647) | Feb. 27 | EdL | LPW* | June 1 | May 17 | 2095 | 1315 | 7397 | 6302 | June 8 | May 24 | June 24 | 757 |
| To clarify the position of Air Force Secretary and to authorize Secretaries of Army, Navy, Air Force, and Secretary of Defense to establish certain positions in professional and scientific service. | S. 2505 | Apr. 15 | POCS | AS | June 11 | May 26 | 2306 | 1408 | 8494 | 6778 | June 16 | June 1 | June 24 | 758 |
| Selective Service Act of 1948 | S. 2655 (H. R. 6401) | May 12 | AS | AS* | May 7 | May 12 | 1881 | 1268 | 8828 | 7681 | June 18 | June 10 | June 24 | 759 |
| To authorize lease of certain space in Lafayette Building in the District of Columbia by FWA. | S. 2706 | May 19 | ........ | PW | ........ | June 12 | ........ | 1614 | 8947 | 8721 | June 18 | June 18 | June 24 | 760 |
| Relative to consolidation of the Lighthouse Service with the Coast Guard. | H. R. 239 | Jan. 3, 1947 | MMF | IFC | Apr. 23, 1947 | June 11 | 294 | 1594 | 5055 | 7942 | May 12, 1947 | June 12 | June 24 | 761 |
| Providing pensions for certain widows of Spanish-American War veterans. | H. R. 4962 | Jan. 14 | VA | Fin | June 11 | June 17 | 2316 | 1747 | 8495 | 8754 | June 16 | June 18 | June 24 | 762 |
| To authorize Marine Band attendance at 1948 national assembly of the Marine Corps League. | H. R. 5036 (S. 2064) | Jan. 20 | AS* | AS | June 2 | June 8 | 2150 | 1541 | 7414 | 7926 | June 8 | June 12 | June 24 | 763 |

Exhibit C

App. 5

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Addition of certain surplus Federal lands to the Chickamauga and Chattanooga Military Park, Ga., and Tenn. | H. R. 5936 | Mar. 22 | PL | IIA | May 5 | June 11 | 1862 | 1600 | 5995 | 7944 | May 18 | June 12 | June 24 | 764 |
| To amend the Standard Time Act relative to placing a certain portion of the State of Idaho in the third time zone. | H. R. 6318 (S. 2547) | Apr. 22 | IFC* | IFC | May 12 | May 13 | 1948 | 1287 | 6010 | 8239 | May 18 | June 15 | June 24 | 765 |
| National military appropriations for 1949 | H. R. 6771 | June 2 | App* | App* | June 2 | June 17 | 2135 | 1763 | 6957 | 8618 | June 2 | June 17 | June 24 | 766 |
| To extend for 1 year the terms of two additional Assistant Secretaries of State. | H. R. 6822 (S. 2869) | June 7 | FA | FR | June 8 | June 15 | 2257 | 1683 | 8489 | 8727 | June 16 | June 18 | June 24 | 767 |
| To provide annuities for certain surviving spouses of annuitants retired prior to Apr. 1, 1948. | H. R. 6641 (S. 2740) | May 20 | POCS | POCS | June 11 | June 15 | 2309 | 1685 | 8494 | 8728 | June 16 | June 18 | June 25 | 768 |
| To authorize free entry of certain railroad equipment under certain conditions from France. | H. J. Res. 433 | June 18 | WM | ... | ... | ... | ... | ... | 9222 | 9098 | June 19 | June 19 | June 25 | 769 |
| Confirming certain oil contracts negotiated by Treasury. | H. R. 4659 (S. 1857) | Dec. 8, 1947 | Jud | BC | May 28 | June 9 | 2077 | 1560 | 7390 | 7930 | June 8 | June 12 | June 25 | 770 |
| To codify Title 3 of the United States Code, entitled "The President." | H. R. 6412 | Apr. 30 | Jud | Jud | May 10 | June 14 | 1898 | 1623 | 6000 | 8722 | May 18 | June 18 | June 25 | 771 |
| To codify Title 18 of the United States Code entitled "Crimes and Criminal Procedure." | H. R. 3190 | Apr. 24, 1947 | Jud | Jud | Apr. 24, 1947 | June 14 | 304 | 1620 | 5048 | 8722 | May 12, 1947 | June 18 | June 25 | 772 |
| To codify Title 28 of the United States Code, entitled "Judicial Code and Judiciary." | H. R. 3214 | Apr. 25, 1947 | Jud | Jud | Apr. 25, 1947 | June 9 | 308 | 1559 | 8392 | 7930 | July 7, 1947 | June 12 | June 25 | 773 |
| To authorize admission of displaced persons | S. 2242 (H. R. 6396) | Mar. 2 | Jud* | Jud | May 4 | Mar. 2 | 1854 | 950 | 7888 | 6916 | June 11 | June 2 | June 25 | 774 |
| To provide for military justice within the Air Force. | S. 2401 (H. R. 5937) | Mar. 29 | AS | AS | June 8 | June 8 | 2263 | 1542 | 8492 | 7925 | June 16 | June 12 | June 25 | 775 |
| To amend the Organic Act of Puerto Rico | S. 2675 | May 17 | PL | IIA | June 4 | May 27 | 2210 | 1418 | 8484 | 6782 | June 16 | June 1 | June 25 | 776 |
| Fixing the rank of the assistant to the Chief of Engineers in charge of river and harbor and flood-control improvements. | S. 2770 (H. R. 6751) | May 28 | AS | AS | June 8 | June 2 | 2256 | 1451 | 8498 | 7696 | June 16 | June 10 | June 25 | 777 |
| Increasing the sum to $30,000 for statue of Commodore John Barry for presentation to Eire. | H. J. Res. 297 | Jan. 15 | FA | FR | May 18 | June 17 | 1972 | 1760 | 7381 | 8754 | June 8 | June 18 | June 25 | 778 |
| Relative to pay of jurors in the United States courts. | H. R. 945 (S. 19) | Jan. 14, 1947 | Jud | Jud* | June 2 | June 7 | 2162 | 1510 | 7418 | 7945 | June 8 | June 12 | June 25 | 779 |
| Relative to probation system in United States courts. | H. R. 2766 | Mar. 25, 1947 | Jud | Jud | May 11 | June 8 | 1923 | 1544 | 6007 | 7926 | May 18 | June 12 | June 25 | 780 |
| Authorizing certain expenditures from appropriations of the Public Health Service. | H. R. 4114 | July 8, 1947 | IFC | LPW | May 11 | June 9 | 1927 | 1578 | 6008 | 7933 | May 18 | June 12 | June 25 | 781 |
| Army-civil functions appropriations for 1949 | H. R. 5524 | Feb. 24 | App* | App* | Feb. 24 | Apr. 23 | 1420 | 1167 | 1772 | 6096 | Feb. 26 | May 19 | June 25 | 782 |
| To amend the Nationality Act of 1940 relative to petition for citizenship. | H. R. 5886 | Mar. 17 | Jud | Jud | Apr. 6 | June 15 | 1661 | 1641 | 6012 | 8723 | May 18 | June 18 | June 25 | 783 |
| Providing that certain fees collected by the Archivist shall be available for disbursement in the interest of the National Archives. | H. R. 6293 | Apr. 21 | POCS | POCS | May 11 | June 15 | 1938 | 1687 | 7380 | 8727 | June 8 | June 18 | June 25 | 784 |
| Second deficiency appropriations for 1948 | H. R. 6935 | June 15 | App* | App* | June 15 | June 19 | 2348 | 1769 | 8461 | 9054 | June 16 | June 19 | June 25 | 785 |
| Authorizing the Coast Guard to maintain aids to navigation. | S. 1853 | Dec. 10, 1947 | MMF | IFC* | May 7 | Mar. 31 | 1878 | 1043 | 5996 | 4288 | May 18 | Apr. 12 | June 26 | 786 |
| Relating to yachts belonging to yacht clubs | S. 2186 | Feb. 20 | MMF | IFC | June 17 | May 27 | 2397 | 1415 | 8957 | 6781 | June 18 | June 1 | June 26 | 787 |
| Acceptance of statue of Gen. Jose Gervasio Artigas from Uruguay. | S. 2591 | Apr. 30 | HA | PW | June 18 | June 2 | 2402 | 1439 | 8837 | 7693 | June 18 | June 10 | June 26 | 788 |
| Authorizing the printing and binding of Cannon's House Procedure. | H. J. Res. 190 | May 6, 1947 | HA | RAdm | May 14, 1947 | June 19 | 382 | 1770 | 5279 | 9056 | May 14, 1947 | June 19 | June 26 | 789 |
| To authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems. | H. R. 3218 | Apr. 25, 1947 | PL | IIA | July 10, 1947 | June 4 | 860 | 1493 | 317 | 7701 | Jan. 19 | June 10 | June 26 | 790 |
| Authorizing permanent appointment in each the Regular Army and Regular Air Force of one officer in the grade of general. | H. R. 6039 | Mar. 30 | AS | AS | Apr. 14 | June 17 | 1734 | 1764 | 4644 | 8755 | Apr. 20 | June 18 | June 26 | 791 |

*Printed hearings.

Exhibit C

App. 6

Exhibit C

The Speaker [1] overruled the point of order on the ground that when the order was made the absence of a quorum was not disclosed by any proceeding in the House and did not appear in the Journal of the House, and that the statements of Members on the subject were merely expressions of their individual opinions.

**2962. The absence of a quorum should appear from the Journal if a legislative act is to be vacated for such reason.**—On June 9, 1856,[2] Mr. George W. Jones, of Tennessee, moved that the Journal of the preceding legislative day be amended by striking out the notice of a bill filed by Mr. Edwards, there being no quorum present on that day.[3]

It was objected in opposition to this motion that the Journal of that day did not show the absence of a quorum; but Mr. Jones urged that it was a matter of common knowledge that there was no quorum present. This was not denied.

Various attempts to dispose of the motion were made, but failed for lack of a quorum until June 20, when Mr. Jones's motion was laid on the table, yeas 89, nays 38.

**2963. When a vote taken by yeas and nays shows that no quorum has voted it is the duty of the Chair to take notice of that fact.**—On June 5, 1884,[4] the House having under consideration a bill forfeiting certain land grants, the yeas and nays were ordered and taken on the passage of the bill. After the vote had been taken the Speaker [5] announced that no quorum had voted and that the bill had not passed.

Upon the question being made by Mr. Poindexter Dunn, of Arkansas, that no Member had made the point that a quorum had not voted, the Speaker decided that when a vote was taken by yeas and nays it would be entered on the Journal of the House, and it was the duty of the Chair to take notice of the fact that a quorum had not voted and that the bill had not passed by a constitutional vote.

**2964. The previous question having been ordered on a bill by unanimous consent in the absence of a quorum, the Speaker on the next day ruled that the action was null and void.**—On February 19, 1873,[6] pending the demand for the previous question on the bill of the House (No. 2354) to provide for the recomputation of the accounts between the United States and the several States growing out of moneys expended by the States in the war of 1812, a quorum failed to vote and a call of the House was ordered. After the roll had been called, the doors closed, and excuses offered, on motion of Mr. Leonard Myers, of Pennsylvania, by unanimous consent, this order was agreed to.

*Ordered*, That all further proceedings under the call be dispensed with, that the previous question shall be considered as seconded, and the main question ordered, upon the bill of the House (H. R. 2354) to provide for the recomputation of the accounts between the United States and the several States growing out of moneys expended by said States in the war of 1812, and that the House shall now adjourn.

The House accordingly, at 12 o'clock m., adjourned.

On the next day, the Journal having been read, Mr. Nathaniel P. Banks, of Massachusetts, made the point of order that the main question on the bill of the

[1] Charles F. Crisp, of Georgia, Speaker.

[2] First session Thirty-fourth Congress, Journal, pp. 1079, 1095; Globe, pp. 1379, 1427.

[3] Formerly bills were introduced by leave, and a previous notice was required.

[4] First session Forty-eighth Congress, Journal, p. 1385.

[5] John G. Carlisle, of Kentucky, Speaker.

[6] Third session Forty-second Congress, Journal, p. 447; Globe, p. 1518.

Exhibit C

Objection having been made, the following resolution was offered by Mr. John Dalzell, of Pennsylvania, and agreed to by the House:

*Ordered*, That the clerk be directed to return to the Senate the enrolled bill (S. 5718) providing for the sale of sites for manufacturing or industrial plants in the Indian Territory, with the information that the House has considered the request of the Senate that the House vacate the action of the Speaker in signing said enrolled bill, and that the unanimous consent necessary to enable such action to be taken was refused.

**3458. The Speaker may not sign an enrolled bill in the absence of a quorum.**—On May 20, 1826,[1] Mr. Jacob Isacks, of Tennessee, from the Joint Committee for Enrolled Bills, reported that the committee had examined an enrolled bill entitled "An act making appropriations for the public buildings in Washington, and for other purposes," and had found the same to be duly enrolled.

When, a quorum not being present, objection was made by a Member to signing the said bill by the Speaker.[2]

And thereupon the House adjourned.

**3459. Proceedings in correcting an error where the Speaker had signed the enrolled copy of a bill that had not passed.**—On March 14, 1864,[3] the Speaker stated to the House that—

the Secretary of the Senate having inadvertently, on Friday last, announced the passage by the Senate of the Court of Claims bill No. 116, instead of the bill of the House (H. R. 116), and having since corrected said error by certifying to the bill which actually did pass, the Speaker, with the consent of the House, will cause the Journal of that day to be amended by the insertion of the title of the bill which actually passed, in lieu of the one originally announced; and when reported by the committee he will sign the proper enrolled bill, canceling his signature of H. R. C. C. 116.

The unanimous consent of the House was given to the course indicated by the Speaker.[4]

**3460. It is a common occurrence for one House to ask of the other the return of a bill, for the correction of errors or otherwise.**—On April 11, 1810,[5] the House proceeded to consider the amendments of the Senate to the bill entitled "An act regulating the Post-Office Establishment."

Mr. Ezekiel Bacon, of Massachusetts, moved that the following words, "Section 25, lines 2 and 3, strike out the words 'each postmaster, provided each of his letters or packets shall not exceed half an ounce in weight,'" appearing to have been an interpolation in the amendments sent from the Senate after the same were received by this House, be expunged therefrom.

Pending consideration a message was received from the Senate requesting the return of the bill and amendments,

it having been discovered that an inaccuracy had taken place in stating the amendments of the Senate.

The House ordered the bill returned, and the same day a message from the Senate returned to the House the corrected amendments.

---

[1] First session Nineteenth Congress, Journal, p. 639.
[2] John W. Taylor, of New York, Speaker.
[3] First session Thirty-eighth Congress, Journal, p. 377; Globe, p. 1096.
[4] Schuyler Colfax, of Indiana, Speaker.
[5] Second session Eleventh Congress, Journal, pp. 355, 356 (Gales and Seaton ed.); Annals, pp. 650 (Vol. I) and 1769 (Vol. II).

Exhibit D

LINDA MARIANO PHONE NO. : 7048952899 May. 15 2010 07:58PM P2

13 09 07:17p

04/04/2009 14:27 2026572574 NACWO PAGE 02

NANCY ERICKSON
SECRETARY

SUITE S-312
THE CAPITOL
WASHINGTON, DC 20510-7100
(202) 224-3622

# United States Senate

OFFICE OF THE SECRETARY

March 9, 2009

Mr. Wayne E. Matthews
715 Bonnie Meadow Lane
Ft. Washington, MD 20744

Dear Mr. Matthews:

Thank you for your recent letter requesting confirmation on the status of H.R. 3190 from the 80th Congress.

I asked the Senate Historian's office to review the correspondence you enclosed, and they were able to verify that no action was taken by the Senate on H.R. 3190 prior to the December 19, 1947 *sine die* adjournment. I have enclosed relevant pages from the *House Journal* and *Congressional Record* for your reference.

Sincerely,

Nancy Erickson

Nancy Erickson
Secretary of the Senate

NE:rwp

Enclosures

CLERK

# Office of the Clerk
## U.S. House of Representatives
## Washington, DC 20515–6601

Exhibit E

September 11, 2006

Thank you for contacting the Office of the Clerk.

After conducting a thorough examination of the journals, I found no entry in the journal of the House of any May 12, 1947 vote on the H.R. 3190 bill, although pages 343-344 of the Journal of the House of Representatives from the 1st Session of the 80th Congress indicates that the bill was amended, purportedly passed, and transmitted to the Senate for concurrence. The Senate took no action on the H.R. 3190 bill prior to the December 19, 1947 sine die adjournment.

Page 5049 of the Congressional Record, 80th Congress, 1st Session indicates 44 Members voting 38 to 6 to amend H.R. 3190 on May 12, 1947. Therefore by counting the total yea and nay vote a quorum was not present.

According to House Rules, when less than a majority of a quorum votes to pass a bill, the journal must show the names of Members present but not voting. I found no record of any names for the May 12, 1947 vote. I hope this information has answered your questions.

Sincerely Yours,

Karen L. Haas

Karen L. Haas
Clerk, U.S. House of Representatives